[S. F. No. 8935. In Bank.—February 15, 1921.]

JOHN PETER HEDEN, Respondent, v. POINT REYES
LAND COMPANY (a Corporation), et al., Appellants.·

[1] VENDOR AND VENDEE—RESCISSION OF CONTRACT—RECOVERY OF
MONEY PAID—LACHES OF PURCHASER—APPEAL—WHEN QUESTION
NOT REVIEWABLE.—In an action in rescission and to recover money
paid as vendee upon a contract for the purchase and sale of land,
where the court found that the plaintiff had been induced to pur-
chase by false representations of the defendants, but further
found that plaintiff had been guilty of laches, and the plaintiff
did not appeal, the question whether the finding of laches was
justified cannot be considered.

[2] ID.—SALE OF PART OF LAND BY VENDOR TO THIRD PERSON—
RIGHTS OF VENDEE.—Where a sale by a vendor to a third person
of a part of land contracted to be sold to a vendee is such an
invasion and impairment of the vendee's rights as amount to a
repudiation of the contract, the vendee is entitled to a judgment
rescinding the contract and for the recovery of the money paid.

[3] ID.—RESALE OF LAND—AUTHORITY OF SELLING AGENT.—An agent
for the sale of lands authorized by the terms of its contract of em-
ployment to resell any lot contracted to be sold after final can-
cellation of the contract with the purchaser has no authority to
resell a lot where the purchaser's contract has not been canceled,
and such a resale is without validity and cannot impair the origi-
nal vendee's rights.

[4] ID.—DEFAULT OF VENDEE—NOTICE OF VENDOR—RECOGNITION OF
CONTRACT—EXTENSION OF TIME.—A notice served by the vendor on
the vendee advising of default in payments and stating that if such
arrears were not paid on or before a stated date the vendor would
be released from all obligations to convey and the vendee would
forfeit all rights under the contract and all amounts paid there-
under was an express recognition of the contract and an extension
of the vendee's time to make payments.

[5] ID.—SALE BY VENDOR TO THIRD PERSON—WHEN CONTRACT NOT
BREACHED.—A sale by a vendor to a third person of property
covered by a contract of purchase and sale does not operate as a
cancellation or rescission of the contract if the rights of the
vendee under the original contract are preserved, or if it does not
prevent the vendor from making good his agreement to convey
title within the time specified.

2. Remedy of vendee for deficiency in quantity or quality, note,
Ann. Cas. 1915D, 1108.

[6] ID.—DEFAULT OF VENDEE—NOTICE OF VENDOR—EXERCISE OF OP-
    TION—NONRESCISSION OF CONTRACT.—Where a contract of sale pro-
    vided that on default by the vendee, the vendor at its option had the
    right to consider itself released from all obligations to convey and
    to declare all rights of the vendee under the contract and all
    amounts paid thereunder forfeited, a notice given by the vendor
    to the vendee demanding overdue payments and stating that if not
    made on or before a stated date the vendor would consider itself
    released and all the rights of the vendee forfeited was not a re-
    scission or repudiation of the contract, or a ratification and accept-
    ance of the vendee's previous effort to rescind, but a declaration
    of reliance upon the contract.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. John T. Nourse, Judge. Reversed.

The facts are stated in the opinion of the court.

Walton C. Webb and C. F. Reindollar for Appellants.

Wm. F. Rose and Alva S. Sherlock for Respondent.

SLOANE, J.—The plaintiff brought this action in rescission and to recover money paid as vendee upon a contract with defendant Point Reyes Land Company for the purchase and sale of farming lands.

The cause of action under the original complaint was based upon fraudulent representations alleged to have been made by defendants whereby plaintiff was induced to purchase.

The vendor, Point Reyes Land Company, was represented in the contract of sale by its selling agent, Locke-Paddon Company.

[1] The trial court found on the evidence that the plaintiff had been induced to purchase by false representations of the defendants. But it was further found that there had been laches on the part of plaintiff in giving notice of rescission, such notice not having been given for nearly two years after plaintiff went into possession of the land. It might be questioned from the evidence if some delay in declaring a rescission was not excusable. Whether such finding of laches was justified cannot, however, be considered on this appeal, as plaintiff, against whom the finding was made, is not appealing.

It is, therefore, not necessary to go into details concerning issues presented by the original complaint stating a cause of rescission for fraud.

The issue raised on this appeal is presented under a supplemental complaint alleging transactions had pending the suit, which plaintiff claims were a breach of the contract by the vendor.

The allegations of the supplemental complaint, under which judgment was given for plaintiff, are as follows: "That during the month of January, 1918, defendant Locke Paddon Company, as agent for Point Reyes Land Company, sold and delivered to one Miller five acres of the said land mentioned and described in plaintiff's original complaint; that said land was a portion of the land purchased by plaintiff from defendant Point Reyes Land Company, as described in the original contract, copy of which is attached to said complaint, and which land is involved in this suit."

It was found by the court on the trial that by virtue of this sale the defendants ousted plaintiff from possession of the land in question and retook possession thereof, and that by a sale of a portion of said land "defendants accepted and ratified the rescission and cancellation of said contract existing between plaintiff and defendant Point Reyes Land Company," and thereby released plaintiff from further liability under the contract, and entitled him to a recovery of money theretofore advanced in the transaction.

Judgment was for plaintiff under this alleged mutual rescission for the sum of $790 against both defendants, Point Reyes Land Company and Locke-Paddon Company.

[2] If this sale of five acres of plaintiff's land by the vendor was such an invasion and impairment of plaintiff's rights, as to amount to a repudiation of the contract, plaintiff is entitled to his judgment under the well-established rule in such cases. (*Merrill* v. *Merrill,* 103 Cal. 287, [35 Pac. 768, 37 Pac. 392]; *Glock* v. *Howard & Wilson Co.,* 123 Cal. 1, [69 Am. St. Rep. 17, 43 L. R. A. 199, 55 Pac. 713]; *Heilig* v. *Parlin,* 134 Cal. 99, [66 Pac. 186]; *Shively* v. *Semi-Tropic Land Co.,* 99 Cal. 259, [33 Pac. 848]; *Gaume* v. *Sheets,* 181 Cal. 119, [183 Pac. 535].)

The appealing defendants, however, dispute the effect or sufficiency of the evidence to support the finding upon which the judgment rests.

On the filing of the supplemental complaint it was stipulated that all its allegations were to be deemed denied, and defendants also filed a separate answer thereto.

It was alleged by defendants, and we think the undisputed testimony supports the allegation, that this sale to Miller of five acres of land contracted to plaintiff was made by the Locke-Paddon Company. There is no evidence that the Point Reyes Company, the owners of the legal title to the land, had anything to do with or in any way authorized this sale. It was shown that the only authority possessed by the Locke-Paddon Company to make contracts for the sale of any of these lands was under a general contract which had been in existence previous to plaintiff's purchase, and under which, indeed, the plaintiff's contract was executed, whereby the Point Reyes Land Company had empowered the Locke-Paddon Company to act as its sales and collection agent for the sales of its lands. This contract contained the following provision: "After the final cancellation of the contract of sale with any purchaser, the party of the second part [Locke Paddon Co.] may resell the lot covered by said canceled contract to any other purchaser it may procure on the same terms and conditions as if said lot had never been sold, such resale to be subject to all the terms and conditions of this agreement."

This, according to the evidence, was the only authority the Locke-Paddon Company had under which it could in any way contract or sell lands embraced under plaintiff's contract.

[3] Now, there seems no escape from the alternatives presented by this state of facts. Either at the time the alleged sale of five acres to Miller was made the contract with plaintiff had already been canceled, in which event the sale was entirely legitimate and could not injuriously affect the rights of plaintiff, or the Locke-Paddon Company was without power or authority to sell, and its contract with Miller was without validity and could not impair plaintiff's rights. It may be said in this connection that there is no evidence in the record that plaintiff was disturbed in his possession, and the finding of the court in this respect is unsupported.

With regard to the status of plaintiff's contract at the time this alleged sale was made, we are of the opinion that

the evidence shows that it was still effective.  The court having found that plaintiff's right of rescission was lost by delay in exercising it, the relations of the parties were still measured by the terms of the contract, and while plaintiff was in default in the stipulated payments, the defendant, Point Reyes Land Company, had on the second day of January, 1918, several days previous to the sale to Miller by the Locke-Paddon Company, served plaintiff with written and signed notice of his default in payments, and notified him that if such arrears were not paid on or before January 9, 1918, "that immediately upon such failure without further act on the part of the undersigned, then the undersigned will be released from any obligations to convey the premises described in the above contract or any part thereof and you shall thereupon forfeit all rights under said contract, and all moneys paid under said contract by you shall immediately belong to and vest in the undersigned in accordance with the terms and provisions of said contract."

[4]  This was an express recognition of the contract by the vendor and an extension of plaintiff's time to make payments thereunder until the 9th of January.

This attempted sale to Miller was made on the 7th of January, while the contract was still uncanceled.

Under these circumstances, the most that can be said of the contract of sale to Miller of part of plaintiff's tract is that it was a contract which would be subject to plaintiff's rights.  That was the utmost of the authority vested in the Locke-Paddon Company under its contract as sales agent.

[5]  It is not every sale by a vendor of property covered by a contract of purchase and sale that will effect a breach of such contract.  It has been repeatedly held that such a sale which preserves the rights of the vendee under the original contract, or which does not prevent the vendor from making good his agreement to convey title within the time specified, will not operate as a cancellation or rescission of the contract.  (*Brimmer* v. *Salisbury,* 167 Cal. 522, [140 Pac. 30]; *Joyce* v. *Shafer,* 97 Cal. 335, [32 Pac. 320]; *Shively* v. *Semi-Tropic Land & Water Co., supra; Garberino* v. *Roberts,* 109 Cal. 125, [41 Pac. 857].)  There is no evidence in the record as to the terms and conditions of this purported sale of the five acres to Miller, excepting the testimony of one of defendants' witnesses that "the

Locke Paddon Company sold it to Mr. Miller on a contract of sale.'' So far as is alleged in the complaint or shown in evidence, this contract may have been made expressly subject to existing rights under plaintiff's previous contract. We do not undertake to say that if the Point Reyes Land Company had authorized and its agent, the Locke-Paddon Company, had executed a sales contract of part of this land to Miller, pending the period covered by the demand, that plaintiff pay up or forfeit his rights, which impaired plaintiff's contract or disturbed his possession, it might not be held a rescission by defendants, but such was not the case.

[6] As to the effect of the notice of January 3d demanding that plaintiff make his overdue payments on or before January 9th or the vendor would consider himself released from obligation to convey the premises and all rights of the vendee forfeited, this was not a rescission or repudiation of the contract, but a declaration of reliance upon it. The contract by its terms provided that should the purchaser fail to comply with any of the covenants or agreements therein contained, ''said seller at its option is thereby released from all obligations in equity to convey said premises or any part thereof and said purchaser shall (at the seller's option) thereupon forfeit all rights under this contract and all money theretofore paid under this contract by said purchaser.''

Such a demand as was here made cannot be construed as a ratification and acceptance of plaintiff's previous effort to rescind the contract under allegations of fraud, as it is an express demand that he carry out the terms of the contract. (*Oursler* v. *Thacher,* 152 Cal. 739, [93 Pac. 1007]; *Skookum Oil Co.* v. *Thomas,* 162 Cal. 539, [123 Pac. 363]; *Cross* v. *Mayo,* 167 Cal. 594, [140 Pac. 283]; *Lemle* v. *Barry,* 181 Cal. 6, [183 Pac. 148].)

Plaintiff having lost, by delay in taking action, his right to rescind for fraud, was left subject to all the terms of the contract, and in the absence of further breach of the contract by his vendor, constituting a new cause of action, is not in a position to recover any of the money previously paid in pursuance of his contract.

The judgment is reversed.

Wilbur, J., Lennon, J., Olney, J., Shaw, J., Lawlor, J., and Angellotti, C. J., concurred.